J-S54012-20 & J-S54013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN BOYD MORROW | : | |
| | : | |
| Appellant | : | No. 873 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 23, 2020
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000886-2017,
CP-28-CR-0000887-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN BOYD MORROW | : | |
| | : | |
| Appellant | : | No. 874 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 23, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000886-2017,
CP-28-CR-0000887-2017

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED JULY 13, 2021**

Appellant John Boyd Morrow appeals[1] *nunc pro tunc* from the judgment of sentence imposed after a jury found him guilty of indecent assault, simple assault, and related offenses in the two criminal cases captioned above.

_____

[1] We have consolidated these appeals for the purpose of this decision.

Appellant challenges the sufficiency and weight of the evidence and claims that the trial court erred in joining the cases for trial. We affirm.

The trial court provided the following summary the evidence presented at the joint trial of both cases:

> [B.W. (Ms. W.)] testified to the first incident [at Docket 887-2017]. [Ms. W.] resided at Trinity House Apartments, a residential facility for elderly and disabled adults located at [an apartment residence (Residence)] in Waynesboro, Pennsylvania. Ms. [W.] explained that she previously suffered a massive stroke which resulted in no feeling in her left side, along with memory problems. On April 2, 2017, Ms. [W.] and her boyfriend . . . were entertaining friends at [her boyfriend]'s apartment at Trinity House. Ms. [W.] was making chili when she heard a knock on the apartment door. She noticed that a person entered the apartment and passed out on [her boyfriends]'s bed.
>
> Ms. [W.] then inquired as to who entered the apartment. She was told that the man was "John Boy." At trial, Ms. [W.] identified [Appellant] as "John Boy." She indicated that she had not seen [Appellant] prior to when he entered the apartment.
>
> Ms. [W.] then described [Appellant's] subsequent conduct:
>
>> He come [sic] out of the bedroom and he was just standing there. I wasn't really keeping an eye on him. I saw movement. I saw him come up behind me. He grabbed my breast right here and I took his arm and went back like this and got that one off. I looked down and saw that . . . he was getting ready to grab my breast over here (indicating). He went to do it. He grabbed me by the arm right here (indicating), I don't have any feeling over there. So I can't say how hard it was because there's no feeling there because of my stroke. But he left a handprint right here (indicating).
>
> Photographs entered into evidence show bruises on Ms. [W.]'s arm. Following the incident, [Ms. W.'s boyfriend] told [Appellant] to leave, but [Appellant] passed out in the hallway. One of Ms. [W.]'s friends then helped [Appellant] out of the apartment.

The second incident [at Docket 886-2017] occurred at the residence of [A.G. (Ms. G.)] . . . . Ms. [G.]'s home is located a block and a half from Trinity House.

During the afternoon on Sunday, April 2, 2017, Ms. [G.] was grocery shopping with her boyfriend Douglas Stevenson. She notified Mr. Stevenson around 5:40 p.m. that she had returned home.

At trial, Ms. [G.] described what subsequently transpired:

> I was putting the groceries away and I was at the refrigerator and I left the back door open. And the next thing I knew someone came up from behind, grabbed my arm, wrapped his arm around my neck. They were whispering if I said anything they would kill me, I could feel their unshaved face and I just kind of froze, and then the hand was on my mouth and one went down my shirt.

During the incident, Ms. [G.] detected a strong smell of alcohol. Ms. [G.] then elaborated on the incident in the following exchange:

> A. He took his hand off my mouth and it ended up down my shirt into my bra and touched my breast and then as I was trying to—I tried to scratch and tried to wiggle like. He had went down into my skirt and into my underwear and—
>
> Q. Did you say it was on top of your underwear?
>
> A. No. It—his hand went into my underwear. I could feel his hand on my skin.
>
> Q. Where on your skin? On your stomach or what?
>
> A. Down my waist in—on my vagina.
>
>           *     *     *
>
> Q. You talked about trying to scratch. Describe that please?
>
> A. I was bringing my hands up and grabbing to try to get away. Then I bit the arm and that's when he pulled back.
>
> Q. You couldn't see the face of his person?
>
> A. I didn't get a good view. Once he pulled his arm away I ran out of the room. He had let go.

Q. Was this person wearing long sleeves, short sleeves?

A. It was long sleeves.

Q. All right. Do you know what—like did you see the sleeves? Can you—like what color they were?

A. It was black. It was dark. It was dark.

Q. When you said you were scratching and trying to scratch, describe that? What did you do?

A. I just brought me [sic] hands up. I was trying to grab at his hands, anything I could grab to try to get away.

Q. Now, grabbing and scratching are two different things. Did you scratch or grab? What did you do?

A. I didn't grab. I didn't get a good grip. It was scratching mostly trying to get away.

Q. Did you reach back and try to get this person off of you at all?

A. I had a rim of a hat that I felt.

Q. Describe again the biting and what you did to get away?

A. I just bit down on the arm that was around my neck. I brought my face down and bit as hard as I could.

Q. At that point did that person let you go?

A. Yes.

Once released, Ms. [G.] ran upstairs and into the bathroom. She did not look behind her at the attacker.

The next day, Monday April 3, 2017, Joan Amsley, Trinity House's site manager, observed [Appellant] attempting to enter the front door of Trinity House. Ms. Amsley was familiar with [Appellant] because he often visited a Trinity House resident, Mr. Darryl Sweeten, and was previously banned from the premises. Upon confronting [Appellant], Ms. Amsley observed that [Appellant] smelled of alcohol and looked disheveled as if he was under the influence. Because of [Appellant]'s appearance and possible intoxication, Ms. Amsley did not permit [Appellant] to enter the building.

Also on Monday, April 3, 2017, Ms. Amsley received noise complaints about a party over the weekend and reviewed Trinity House's video surveillance footage. The surveillance footage showed a man identified as [Appellant] entering and exiting the building on Sunday, April 2, 2017. According to Ms. Amsley, the footage showed [Appellant] enter Trinity House early in the morning on Sunday, April 2, 2017. The video footage also shows [Appellant] leave Trinity House around 4:30 on the same day. Ms. Amsley noted that [Appellant] was wearing the same clothing in the footage as Ms. Amsley observed him in on Monday morning.

Upon reading the Waynesboro Police Department press release describing Ms. [G.]'s attacker as wearing a black hoodie and smelling of alcohol, Ms. Amsley alerted Waynesboro police of [Appellant]'s appearance. [Appellant] was thereafter brought in for an interview on April 4, 2017.

[Appellant] was interviewed for over three hours. Pursuant to protocol, [Appellant] was handcuffed to the table during the interview.

[During the interview, police showed Appellant a photograph of the dress Ms. [G.] was wearing during the attack, and [Appellant] stated that he recognized the dress. Appellant also stated that his ex-girlfriend lived in the area of where the incidents occurred. Appellant told police that he may have mistaken Ms. [G.]'s house for his ex-girlfriend's residence.

After Appellant was placed in a jail sail, Appellant asked an officer to "explain to Ms. [G.] that he was sorry" and that "[h]e did not mean to hurt her that way."

While in custody, and at the suggestion of officer, Appellant wrote a letter to Ms. [G.] stating:

> Dear ma'am, hello. I just wanted to drop you a few lines and tell you plus your family how truly sorry that I am. I don't know if I hurt you or what I did. All I know is that I'm truly sorry for all of this. Please forgive me. I got drunk and messed up. I am truly, truly sorry, and I really hope you can find it in your heart to forgive me.]

Photographs taken by [police] show scratches on [Appellant]'s right hand near his thumb and a mark on [Appellant]'s right forearm.

Post-Sentence Op. & Order, 10/1/18, at 3-8 (record citations omitted).

On February 23, 2018, the jury found Appellant guilty of the following—at CP-28-CR-0000886-2017 (concerning Ms. G.), burglary, criminal trespass, indecent assault, unlawful restraint, terroristic threats and simple assault,[2] and at CP-28-CR-0000887-2017 (concerning Ms. W.), indecent assault and simple assault.[3]  On May 23, 2018, the trial court sentenced Appellant to an aggregate term of 360 to 840 months' imprisonment at 866-2017, and 312 to 624 months' imprisonment at 867-2017, with 12 to 24 months running consecutive to 866-2017.[4]  The total aggregate sentence for both cases was 372 to 864 months' imprisonment.

Appellant timely filed a post-sentence motion on Monday, June 4, 2018. *See* 1 Pa.C.S. § 1908.  The trial court denied Appellant's motion in the opinion and order entered on October 1, 2018.

Appellant previously appealed, and on October 19, 2019, this Court quashed based on ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), and ***Commonwealth v. Creese***, 216 A.3d 1142 (2019), *overruled* ***Commonwealth v. Johnson***, 236 A.3d 1141 (2020) (*en banc*).  ***See***

---

[2] 18 Pa.C.S. §§ 3502(a)(1)(i), 3503(a)(1)(i), 3126(a)(2), 2902(a)(1), 2706(a)(1), and 2701(a)(3), respectively.

[3] 18 Pa.C.S. §§ 3126(a)(2) and 2701(a)(1), respectively.

[4] The trial court applied mandatory minimum sentences of 300 to 600 months' imprisonment for indecent assault at each docket based on Appellant's prior conviction for indecent assault.  ***See*** 42 Pa.C.S. § 9718.2 (sentences for sexual offenders).

*Commonwealth v. Morrow*, 1806 MDA 2018, 2019 WL 5401089, at *1-2 (Pa. Super. Filed Oct. 22, 2019) (unpublished mem.)  On February 25, 2020, Appellant filed a counseled amended Post Conviction Relief Act[5] (PCRA) petition seeking reinstatement of his direct appeal,[6] and on May 29, 2020, the PCRA court granted relief.

On June 25, 2020, Appellant filed timely notices of appeal from the judgments of sentence, and he complied with the trial court's orders to file and serve Pa.R.A.P. 1925(b) statements.[7]  The trial court filed a Rule 1925(a)

_____

[5] 42 Pa.C.S. §§ 9541-9546.

[6] Appellant initially filed a *pro se* PCRA petition on April 8, 2019, during his previous direct appeal.  The PCRA court dismissed without prejudice pending resolution of Appellant's direct appeal.  After this Court quashed the previous appeal, Appellant mailed a letter to the court seeking to refile his previous petition.  The PCRA court entered an order on January 2, 2020, treating Appellant's PCRA petition as filed effective December 16, 2019.  The court appointed counsel who timely filed the amended PCRA petition on February 25, 2020.  Because Appellant's amended PCRA petition was timely filed after the exhaustion of Appellant's direct appeal rights, we need not consider the propriety of the PCRA court's order deeming Appellant's initial PCRA petition as filed effective December 16, 2019.  **But cf. Commonwealth v. Beatty**, 207 A.3d 957, 961 (Pa. Super. 2019), *appeal denied*, 218 A.3d 850 (Pa. 2019), (noting that a PCRA court cannot hold in abeyance a subsequent petition filed when a first PCRA appeal was pending).

[7] The Commonwealth asserts that Appellant's Rule 1925(b) statements were too vague to preserve his challenges to the sufficiency and weight of the evidence.  Commonwealth's Brief at 10-14.  Specifically, the Commonwealth notes that Appellant's Rule 1925(b) statements did not specify the elements or finding that the Commonwealth failed to prove or necessitated a new trial. **Id.**

*(Footnote Continued Next Page)*

opinion referring, in part, to its October 1, 2018 opinion and order denying Appellant's post-sentence motion.

Appellant presents five issues, which we have reordered as follows:

1. Whether the trial court should have granted [Appellant]'s post-sentence motion for acquittal as there was insufficient evidence presented at trial to prove beyond a reasonable doubt that [Appellant] was guilty of burglary, criminal trespass, indecent assault, unlawful restraint, terroristic threats and simple assault at 886-2017?

2. Whether the trial court should have granted [Appellant]'s post-sentence motion for acquittal as there was insufficient evidence presented at trial to prove beyond a reasonable doubt that [Appellant] was guilty of indecent assault and simple assault at 887-2017?

3. Whether the trial court should have granted [Appellant]'s post-sentence motion and found [Appellant] not guilty as the verdict was against the weight of the evidence as to his burglary, criminal trespass, indecent assault, unlawful restraint, terroristic threats and simple assault conviction[s] at 886-2017?

4. Whether the trial court should have granted [Appellant]'s post-sentence motion and found [Appellant] not guilty as the verdict was against the weight of the evidence as to his indecent assault and simple assault conviction[s] at 887-2017?

_____

Here, Appellant preserved his challenges in his post-sentence motions and the trial court addressed the merits of his challenges in the opinion and order denying his motion. Moreover, Appellant presents no new legal theories relief in this appeal. Therefore, our review concludes that Appellant's 1925(b) statements are discernible and not fatally vague, and we decline to find waiver pursuant to Rule 1925(b)(4)(vii). **See** Pa.R.A.P. 1925(b)(4)(ii) (requiring that a statement identify an error "with sufficient detail to identify the issue"), (v) (noting that errors identified in a statement will be deemed to include subsidiary issues that were raised in the trial court), (vii) (requiring waiver of issues not raised in accordance with Rule 1925(b)).

5. Whether [Appellant] should be granted a new trial because the trial court erred in joining both criminal action 886-2017 and 887-2017 for trial?

Appellant's Brief at 5.

## Sufficiency of the Evidence

Appellant's first two claims challenge the sufficiency of the evidence supporting his convictions. Briefly, as to 886-2017, he asserts that there was insufficient evidence to identify him as the perpetrator of the assault on Ms. G. With respect to 887-2017, he claims that the evidence was insufficient to establish that he assaulted Ms. W. for the purpose of sexual gratification or caused her substantial pain.

Initially, the general standard of review governing a challenge to the sufficiency of the evidence is as follows:

> We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

***Commonwealth v. Strafford***, 194 A.3d 168, 175 (Pa. Super. 2018) (citations omitted).

## Docket 886-2017

Appellant contends that the Commonwealth failed to establish his identity with respect to the charges at 886-2017, including burglary, criminal

trespass, indecent assault, unlawful restrain, terroristic threats and simple assault. Appellant emphasizes that Ms. G. "never saw the person who attacked her[,]" and was unable to identify Appellant from a photographic line up. Appellant's Brief at 16-17. Appellant further notes that there was no physical evidence, such as fingerprints or DNA, establishing that he was present inside Ms. G.'s home. *Id.* at 17. Although Appellant acknowledges that he told police that he recognized Ms. G.'s dress and wrote her a letter of apology, he contends that he did not directly admit that he attacked her or that he recognized her dress because of the attack. *Id.* at 18.

The following principles further guide our review of a challenge to the sufficiency of the Commonwealth's identification evidence:

> In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. Evidence of identification need not be positive and certain to sustain a conviction.
>
> . . . Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.

*Strafford*, 194 A.3d at 175-76 (citations and quotation marks omitted). Challenges based on the indefiniteness of or uncertainty in the Commonwealth's identification evidence goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (discussing a witness's identification of the defendant as the perpetrator of the crimes).

Instantly, the trial court concluded there was ample circumstantial identifying Appellant as the individual who entered Ms. G.'s home and committed the assault. Specifically, the trial court explained:

> While [Appellant] laments that no direct evidence connects [him] to the attack on Ms. [G.], a conviction may be supported by "wholly circumstantial evidence." At trial, Ms. [G.] indicated that her attacker was wearing a dark, long-sleeved jacket and a baseball cap, and smelled of alcohol. The jury was therefore entitled to infer that [Appellant]—who was encountered the next morning wearing similar clothing, smelling of alcohol, and in close proximity to Ms. [G.]'s home—was the attacker. Moreover, that conclusion is further supported by [Appellant]'s interview with police where [Appellant] displayed marks on his right hand and forearm, he indicated that he recognized Ms. [G.]'s dress, and he sought to apologize to Ms. [G.] in a handwritten letter.

Post-Sentence Op. & Order, 10/1/18, at 9.

Having reviewed the record in a light most favorable to the Commonwealth, we agree with the trial court that there was ample circumstantial evidence establishing Appellant's identity as the perpetrator of the charges at 886-2017. As noted by the trial court, Ms. G. described her assailant's clothing and the odor of alcohol. *See* N.T., 2/22/18, at 125-27. Ms. Amsley testified that she saw Appellant a block and a half away from Ms. G's home the morning after the assault and that he was wearing a similar colored jacket, a baseball hat, and still smelled of alcohol. *See id.* 43, 50. Further, Appellant's hand and arm bore marks consistent with Ms. G.'s description of her struggle with the assailant. *See id.* at 181-82. Lastly, the Commonwealth presented evidence of Appellant's own statements and his

apology to Ms. G. ***Id.*** at 185-86. Accordingly, Appellant's claim that the Commonwealth's identification evidence was insufficient is meritless.

**Docket 887-2017**

Appellant also contends that there was insufficient evidence supporting his convictions for indecent assault and simple assault at 887-2017. Concerning indecent assault, Appellant argues that the Commonwealth failed to prove that he touched assaulted Ms. W. for the purpose of sexual gratification. ***See*** Appellant's Brief at 22, 25-26. Appellant relies on ***Commonwealth v. McClintic***, 851 A.2d 214 (Pa. Super. 2004), for the proposition that the circumstances surrounding his touching of Ms. W.'s breasts failed to establish the contact was sexual in nature. ***Id.*** at 25-26. Appellant notes that he contacted Ms. W. in front of a group of people, that he did not try to kiss, hug, or caress her, and that he did not say anything to indicate his intent to arouse or gratify a sexual desire. ***Id.*** at 26.

Concerning simple assault, Appellant asserts that while he grabbed Ms. W.'s arm, she did not experience pain or notice bruising until the next day or testify that the contact impaired her physical condition. ***Id.*** According to Appellant, the absence of evidence of impairment or substantial pain requires an acquittal for simple assault. ***Id.*** at 26-27.

Section 3126 of the Crimes Code defines indecent assault, in part, as follows:

> **(a) Offense defined.—**A person is guilty of indecent assault if the person has indecent contact with the complainant . . . and the person does so by forcible compulsion[.]

- 12 -

18 Pa.C.S. § 3126(a)(2).  "Indecent contact" means "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."  18 Pa.C.S. § 3101.

Section 2701 defines simple assault, in part, as follows:

> **(a) Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he . . . attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S. § 2701(a)(1).  "Bodily injury" means "[i]mpairment of physical condition or substantial pain."  18 Pa.C.S. § 2301

Instantly, the record establishes that when Appellant entered Ms. W.'s boyfriend's apartment, Ms. W. was not previously acquainted with Appellant. *See* N.T., 2/22/18, at 66.  However, he eventually approached her from behind and grabbed her breast.  *See id.* at 66-67.  After Ms. W. removed his hand, Appellant tried to grab her breast a second time while also seizing her arm.  *See id.* at 67.  Although Ms. W. could not feel how hard he held her arm because of her stroke, she testified that he left a handprint and that her arm was bruised the following day.  *See id.*

Based on the foregoing, we discern no merit to Appellant's arguments. Although Appellant contends that the Commonwealth failed to establish his intent to arouse or gratify his sexual desire, the evidence belies his claim in that he smelled of alcohol and grabbed Ms. W's breast and then attempted to grab her breast a second time even after she removed his hand.

Further, although Appellant focuses on the fact that Ms. W. did not, and indeed could not, feel substantial pain, we agree with the trial court that the jury could have reasonably concluded that Appellant intended to cause bodily injury. Specifically, when viewed in a light most favorable to the Commonwealth, Appellant grabbed Ms. W.'s arm with sufficient force to leave a handprint and cause bruising the following day, and he did so after Ms. W. had removed his hand from her breast and was attempting to grab her breast for a second time. Therefore, there was basis for the jury to find Appellant intended to cause bodily injury.

For these reasons, we conclude there was sufficient evidence sustaining Appellant's convictions for indecent assault and simple assault in Docket 887-2017. Accordingly, no relief is due.

### Weight of the Evidence

Appellant also claims that the verdicts in both cases were against the weight of the evidence. In support, Appellant essentially repeats the arguments set forth in his sufficiency claims. *See* Appellant's Brief at 20-21, 28-29. Appellant adds that at Docket 886-2017, the police induced his inculpatory statements and the apology concerning Ms. G. by falsely stating that his fingerprints were found at the scene and that he could be charged with rape. *Id.* at 20-21. Appellant further argues that at Docket 887-2017, Ms. W. was an unreliable witness based on inconsistent evidence concerning whether she met Appellant before the incident, discrepancies in her testimony

regarding Appellant's conduct before the assault, and her testimony that she takes medication that affects her memory. ***Id.*** at 28.

When reviewing a weight claim, our standard of review is as follows:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (*en banc*) (citations omitted and formatting altered).

Instantly, Appellant raised his weight of the evidence claims in his post-sentence motion and accompanying brief. The trial court thoroughly examined the record and rejected his arguments. As the trial court explained at Docket 886-2017, it agreed that the police conduct during the interviews "could be grounds for discounting the evidentiary value of the statements made to police [regarding Ms. G.], it [was] the jury's role as ultimate fact-finder to weigh the evidence here." Post-Sentence Op. & Order, 10/1/18, at 13. Nevertheless, the trial court "decline[d] to usurp that role here, given

[Appellant] does not assert any other facts which [were] 'so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice'" *Id.* at 13-14 (citation omitted).

Further, at 887-2017, the trial court reasoned:

[Appellant]s weight of the evidence argument primarily concerns Ms. [W.]'s credibility. Credibility determinations are in the province of the jury; the jury is entitled "to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder." Here, the jury found Ms. [W.]'s testimony credible despite the discrepancies noted above. Such a determination does not shock our sense of justice.

*Id.* at 14.

Based on the foregoing, we conclude that the trial court appropriately considered and rejected Appellant's weight of the evidence claim. As Appellant provides no basis to conclude that the trial court abused its discretion, his weight of the evidence claims merit no relief. *See Gonzalez*, 109 A.3d at 723.

**Joinder**

Appellant claims that the trial court erred in granting the Commonwealth's motion to consolidate the charges at Dockets 886-2017 and 887-2017. Appellant highlights the differences between the facts and charges in each case and asserts that "[w]hat Appellant is alleged to have done in one Criminal Action has no bearing on his intent, an absence of mistake or a common scheme in the other Criminal Action, as the Actions involve different victims, locations, crimes and settings." Appellant's Brief at 31. Appellant

- 16 -

claims that the consolidation also confused the jury and permitted the jury to convict him based on a propensity to commit the crimes. *Id.* at 32-33.

The Commonwealth responds that the trial court properly consolidated the cases and that the record supports the ruling. The Commonwealth asserts that the evidence in each case was admissible in the other to establish intent, absence of mistake, or a common scheme. Commonwealth's Brief at 16. The Commonwealth notes that the offenses occurred on the same day, within a short period of time, and in close proximity to each other, that Appellant was dressed in a similar manner throughout, and that the cases involved similar criminal acts. *Id.* at 16-17. The Commonwealth further argues that the evidence was capable of separation. *Id.* at 17.

Generally, the decision to "join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." ***Commonwealth v. Wholaver***, 989 A.2d 883, 898 (Pa. 2010). Pursuant to Rule 582, "[o]ffenses charged in separate indictments or informations may be tried together if . . . the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1). Additionally, Rule 583 provides that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

This Court utilizes the following three-part test for evaluating whether joinder is appropriate in matters involving different acts or transactions:

> (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Brookins*, 10 A.3d 1251, 1256 (Pa. Super. 2010) (citations omitted).

The trial court's "initial determination of admissibility is critical to the court's disposition of the severance motion; thus, the evidence must be weighed in no less rigorous a fashion than if it were proffered for admission at trial." *Id.* (citation omitted). Pa.R.E. 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Second, the trial court must determine whether joinder would pose a danger of confusing the jury. *Brookins*, 10 A.3d at 1256. Our Supreme Court has held that where the criminal offenses at issue are distinguishable in time,

place, and parties involved, a jury is capable of separating the evidence. ***See***

***Commonwealth v. Collins***, 703 A.2d 418, 423 (Pa. 1997).

Finally, the trial court must evaluate whether joinder would unfairly

prejudice the defendant. ***Brookins***, 10 A.3d at 1256; ***see also*** Pa.R.Crim.P.

583. This Court has explained that

> [t]he prejudice of which Rule 583 speaks is . . .  that which would
> occur if the evidence tended to convict the [defendant] only by
> showing his propensity to commit crimes, or because the jury was
> incapable of separating the evidence or could not avoid
> cumulating the evidence. Additionally, the admission of relevant
> evidence connecting a defendant to the crimes charged is a
> natural consequence of a criminal trial, and it is not grounds for
> severance by itself.

***Commonwealth v. Dozzo***, 991 A.2d 898, 902 (Pa. Super. 2010) (citation

omitted).

Instantly, the trial court granted the Commonwealth's motion for joinder

and explained:

> In order to establish the identity of the perpetrator in [886-2017],
> the Commonwealth may seek to introduce evidence from [887-
> 2017].  In order to establish intent, absence of mistake, or
> common scheme in [887-2017], the Commonwealth may seek to
> introduce evidence from the [886-2017].  Review of the transcript
> further suggests that the Commonwealth is likely to attempt to
> show that on April 2, 2017, an intoxicated individual, identified by
> Bonnie [W.] as [Appellant], committed the first assault on [W.] at
> [887-2017], was thrown out of the apartment, walked a block to
> . . . residence of [Ms. G.], entered the residence without [G.]'s
> knowledge or permission, and committed the second assault on
> [G.].  Given the above, we find that joinder pursuant to
> Pa.R.Crim.P. 582(A)(1)(a) and (b) is proper. We further find that
> the events are capable of separation by the jury and that specific
> instructions from the court with respect to the circumstances

under which they may consider the evidence will be adequate to protect [Appellant]'s right to fair trial.

Order, 9/25/17, at 3-4.

In the order and opinion denying Appellant's post-sentence motion, the trial court further explained:

We reaffirm our conclusion that joinder was appropriate under Rule 582(A)(1)(a). Based on our review of the record, evidence of the offenses in each criminal action would be admissible in a separate trial for the other. Evidence from the incident with Ms. [W.] would be admissible to establish the identity of the perpetrator of the incident with Ms. [G.]. Likewise, evidence from Ms, [G.]'s attack would be admissible to establish intent, absence of mistake, or common scheme in the incident with Ms. [W.].

We moreover find that the offenses were capable of separation by the jury. Our courts have stated, "where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." As noted above, [Appellant] concedes that the criminal actions involve "different victims, locations, crimes and settings[,"] hence, the jury was capable of separating the offen[s]es.

Finally, joinder did not prejudice [Appellant] so as to deprive him of a fair trial. Our precedent holds that "prejudice" within the meaning of the joinder rule is "that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." Here, the evidence was admissible for purposes other than to show [Appellant's] propensity to commit crimes, namely identity, intent, absence of mistake, and common scheme. Lastly, as discussed above, the jury was capable of separating the evidence in convicting [Appellant] of each offense. As a result, [Appellant] did not suffer prejudice as a result of the joinder of the 886-2017 and 887-2017 dockets for trial.

Post-Sentence Op. & Order, 10/1/18, at 16-17.

- 20 -

Our review reveals no abuse of discretion nor error of law in the trial court's ruling to consolidate these cases. *See Wholaver*, 989 A.2d at 898. Aside from highlighting the differences between the two cases, Appellant fails to develop any meaningful argument that the evidence in either case was inadmissible in the other. *See Brookins*, 10 A.3d at 1256. Further, as noted by the trial court, the record confirms that the facts of each case were separable and would not confuse the jury. *See* Post-Sentence Op. & Order, 10/1/18, at 16-17. Lastly, the trial court's determination that Appellant did not suffer prejudice as a result was proper, *see id.*, and Appellant's bald assertion that the jury could have convicted him based on a showing of a propensity to commit the crimes has no support in the record. Accordingly, we conclude Appellant's claim is meritless.

## Conclusion

For the reasons herein, we conclude Appellant's challenges to the sufficiency of the evidence, the weight of the evidence, and the trial court's ruling to consolidate the two cases merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021